UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DEBORAH M. EVANS, <br><br> Plaintiff, <br><br> v. <br><br> CORDOBA LEGAL GROUP LLC, and STRATTON LAW OFFICE PLLC, <br><br> Defendants. | CIVIL COMPLAINT <br><br> CASE NO. 5:25-cv-10287 <br><br> DEMAND FOR JURY TRIAL |

## COMPLAINT

Now comes DEBORAH M. EVANS ("Plaintiff"), by and through the undersigned, complaining as to the conduct of CORDOBA LEGAL GROUP LLC ("Cordoba") and STRATTON LAW OFFICE PLLC ("Stratton") (collectively "Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.,* the Michigan Credit Services Protection Act ("MCSPA") under M.C.L. § 445.1821 *et seq.,* and Breach of Fiduciary Duty, against Defendants in connection with their unlawful and fraudulent conduct.

1

## JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conduct business within the Eastern District of Michigan and a substantial portion of the events or omissions giving rise to the claims occurred within the Eastern District of Michigan.

## PARTIES

4. Plaintiff is a consumer over 18 years of age residing in West Bloomfield, Michigan, which lies within the Eastern District of Michigan.

5. Cordoba is a law firm, credit repair organization, and debt settlement provider that claims to assist consumers with their credit issues by offering their services in negotiating down the amount of debt owed so that consumers can address these debts and ultimately become debt free. Cordoba is a limited liability company organized under the laws of the state of Florida with its principal place of business located at 102 NE 2nd Street, Unit 252, Boca Raton, Florida 33432.

6. Stratton is a law firm and, upon information and belief, entity with whom Cordoba works in connection with the provision of its debt settlement and credit repair services to consumers in jurisdictions which Cordoba is otherwise not admitted to practice or otherwise prohibited from providing its services. Stratton is a professional corporation organized under the laws of the state of Michigan with its principal place of business located at 25726 Kilreigh Drive, Farmington Hills, Michigan 48336.

7. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

8. In approximately June of 2024, Plaintiff was struggling managing certain debts given the fixed and limited nature of her income, and subsequently spoke with her pastor about her situation.

9. Plaintiff's pastor referred Plaintiff to "Pure Path Financial" ("Pure Path"), which was purportedly a faith-based organization assisting consumers with managing their debts.

10. Plaintiff, finding desirable the prospect of receiving assistance from a faith-based organization, sought out Pure Path.

11. Plaintiff then spoke with a representative identified as "Adante" regarding the services over the phone on or about June 10, 2024.

12. Throughout this entire conversation, Adante repeatedly reiterated and suggested that the services at issue were being provided and would be provided by faith-based organizations.

13. However, Adante instead sold Plaintiff on Defendants' services, neither of whom would remotely be considered faith-based organizations.

14. In describing the services, Adante represented to Plaintiff that they would result in Plaintiff being completely debt free, so long as Plaintiff made a series of fixed, predetermined monthly payments over a couple of years.

15. Plaintiff's fixed income meant that the fixed monthly payments were particularly important to Plaintiff.

16. Adante advised that Plaintiff would enroll certain debts in the program, and then Plaintiff's monthly payments would be used to enter into negotiations with creditors and debt collectors to achieve a reduced balance, ultimately helping Plaintiff pay down her debts for less than the balance owed and improve her credit.

17. Adante affirmatively represented to Plaintiff that the services would improve her credit score by improving her debt-to-income ratio and ultimately making her a more creditworthy consumer.

4

18. Plaintiff would ultimately save money, have lower monthly payments, and improve her credit through the services at issue.

19. Adante further made it seem as though the services would result in payments to creditors being picked up, just at lower balances.

20. Plaintiff was further told that she would have a dedicated attorney, including a local attorney, with representatives and assistance readily available to assist Plaintiff throughout the program.

21. Finding the representations desirable, on or about June 10, 2024, Plaintiff agreed to proceed with the program.

22. Adante then sent Plaintiff Cordoba's contract to sign electronically.

23. Adante failed to explain the contract to Plaintiff, and similarly misrepresented a number of terms in the parties' agreement.

24. Plaintiff then executed the agreement with Cordoba.

25. Cordoba's contract represented that Stratton was Plaintiff's "local legal counsel" in connection with the services, and that Stratton would perform or otherwise supervise work being done on Plaintiff's behalf.

26. Upon information and belief, Stratton failed to provide any services, let alone supervise any services, purportedly provided to Plaintiff by Cordoba or any other party.

27. Instead, Cordoba involved Stratton in its program, and suggests Michigan consumers have this "local" counsel, in a deceptive, misleading, and misguided effort to attempt to evade Michigan restrictions imposed upon debt settlement companies.

28. While Defendants' practices fail to provide the intended prophylactic effect, they are nevertheless indicative of the generally deceptive, misleading, and unlawful nature of Defendants' business designed to dupe consumers into believing they have a type and level of representation that not only fails to exist but was concocted as a means to evade consumer protection statutes.

29. Plaintiff then began making her monthly payments to Defendants, which totaled approximately $363 per month.

30. Plaintiff persisted in making her payments to Defendants for several months.

31. After several months of payments, Defendants presented Plaintiff with a settlement offer.

32. However, the settlement reached would have required Plaintiff to substantially increase her monthly payments in order to meet the terms of the settlement.

33. Plaintiff told Defendants not to accept the settlement, and that she would call them back.

34. When she called back, Plaintiff was unable to speak to the representative she had previously spoke with, despite the representations that she would be able to communicate with a specific dedicated account representative or attorney.

35. The representative Plaintiff spoke with informed Plaintiff that the settlement had been accepted, and that Plaintiff's monthly payments would increase accordingly.

36. Plaintiff was further charged substantial fees as a result of the unapproved settlement.

37. Plaintiff frantically attempted to figure out how the settlement was accepted without her authorization, but could never speak with any representative who knew how the settlement was approved, to the extent her calls and communication efforts were ever actually responded to.

38. Frustrated by the nature of Defendants' unilateral and unfair conduct and financial strain it had caused Plaintiff, Plaintiff attempted to cancel Defendants' services.

39. Defendants stymied Plaintiff's cancellation efforts and persisted charging her.

40. Eventually, Plaintiff's services were cancelled.

41. When Plaintiff asked for a refund, Defendants advised that they would be retaining all of the sums remaining in her dedicated account, despite failing to completely perform any service for Plaintiff.

42. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendants for deficient and misrepresented services, denial of the benefit of her bargain with Defendants, diminished credit score, diminished credit capacity, as well as numerous violations of her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair and debt settlement organizations.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT
PLAINTIFF AGAINST DEFENDANTS

43. Plaintiff repeats and realleges paragraphs 1 through 42 as though fully set forth herein.

44. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

45. Cordoba is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any

consumer with regard to any activity or service for the purpose of improving a consumer's credit.

46. Cordoba represented, both itself and through its marketing partners, both expressly and by implication, that successfully completing its program would result in improving Plaintiff's credit.

47. Stratton is further a "credit repair organization" given the representations made regarding its involvement in Cordoba's services which, given the nature of the services and representations made, underscore Stratton's purported provision of services with an explicit and implicit purpose of improving Plaintiff's credit.

   a. **Violations of CROA § 1679b(a)**

48. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits **any person** from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), **any person** is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

49. Defendants violated the above provisions of the CROA through the deceptive and misleading representations and courses of conduct which suggested to Plaintiff that the services at issue were being provided by faith-based organizations.

9

Defendants, in conjunction with their marketing agent and affiliate Pure Path, deceptively and misleadingly represent the services and providers as being faith-based, despite the companies having no such faith-based mission or values. Upon information and belief, Defendants and their marketing partners assume a variety of different roles, including faith-based organizations, or purported lenders providing consolidation loans, in order to get consumers into the door so that they can then be sold deceptively-represented debt settlement services, and ultimately receive compensation for the referral of business to Defendants.

50. Defendants further violated the above provisions of the CROA through their deceptive conduct in representing that Plaintiff's payments into the program would be fixed and constant. Plaintiff's fixed income made this aspect of the services crucial to Plaintiff. However, as soon as a settlement was reached (without Plaintiff's authorization), Plaintiff's monthly payments were increased. Defendants deceptively represented the fixed nature of the payments so as to assure Plaintiff that she would be able to cover the payments, which she was ultimately unable to do through Defendants' increase.

51. Defendants further violated the above provisions of the CROA through their deceptive conduct in agreeing to resolve an enrolled debt without Plaintiff's authorization. Defendants required Plaintiff's permission to settle any debts, did not receive it, yet deceptively decided to resolve an account without authorization,

10

resulting in Defendants collecting their fee. Defendants deceptively and misleadingly resolved the debt and put their own interests in receiving payment ahead of Plaintiff's interests in ensuring the settlements met her financial needs and would otherwise be able to be completed by Plaintiff.

52. Defendants further violated the above provisions of the CROA through its deceptive conduct in agreeing to a settlement it knew Plaintiff would not be able to afford. Defendants knew that Plaintiff was on a fixed income and would not be able to afford any increase in her monthly payments. Nevertheless, and without authorization, they entered into a settlement that would have increased Plaintiff's monthly payments. Upon information and belief, Defendants are engaged in a pattern and practice of entering into settlement agreements for their clients, regardless of whether a consumer will reasonably be able to complete the terms of the settlement reached.

53. Defendants further violated the above provisions of the CROA through their concerted and deceptive conduct and representation as to Stratton's involvement in the services at issue. It was represented to Plaintiff that Stratton was her local counsel and would provide services. However, upon information and belief, Stratton had no actual or meaningful involvement in or oversight over the services being provided. Defendants deceptively include Stratton as a means to further assure consumers and

11

Plaintiff that there would be dedicated staff in her area to assist, only for such assistance to be completely illusory.

54. Defendants further violated the above provisions of the CROA through their deceptive representations as to the customer service representatives that would be available to Plaintiff.

55. Defendants further violated the above provisions of the CROA through their deceptive and misleading conduct in representing the services one way when inducing Plaintiff to sign, only to cut against or blatantly contradict those representations through the contractual terms to which Plaintiff was subjected. Defendants seeks to benefit from the beneficial and positive representations made to consumers orally when consumers are being sold on services, only to bury a number of contradictory representations in its dense contractual language with Plaintiff that she was not adequately nor sufficiently provided an opportunity to review. Cordoba's inclusion of a merger and integration clause only further illustrates the deceptive and misleading nature of the conduct.

### b. Violations of CROA § 1679b(b)

56. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

57. Cordoba violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Upon information and belief, Cordoba charged Plaintiff various fees, including settlement fees, prior to the complete performance of the services it had agreed to perform.

### c. Violation of CROA § 1679c

58. The CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumer. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

59. Cordoba violated 15 U.S.C. §§ 1679c(a)-(b) through its failure to provide the written disclosures required under § 1679c. Cordoba never provided such disclosures, nor did it provide a separate document containing such disclosures.

### d. Violation of CROA §§ 1679d

60. The CROA, pursuant to 15 U.S.C. § 1679d, outlines the various requirements for contracts entered into between credit repair organizations and consumers.

61. Cordoba violated § 1679d through the noncompliant nature of its contract.

62. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, DEBORAH M. EVANS, respectfully requests that the Honorable Court enter judgment in her favor as follows:

   a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

   b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

   c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

   d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

   e. Awarding any other relief as the Honorable Court deems just and appropriate.

## COUNT II – VIOLATIONS OF THE MICHIGAN CREDIT SERVICES PROTECTION ACT

63. Plaintiff restates and realleges paragraphs 1 through 62 as though fully set forth herein.

64. Plaintiff is a "buyer" as defined by M.C.L. § 445.1822(a).

65. Defendants are "credit services organization[s]" as defined by M.C.L. § 445.1822(b), as they attempt to improve consumers' credit through the services, and they act as an intermediate between a debtor and a creditor on behalf of the debtor

regarding credit that was extended prior to any agreement to have the credit services organization serve as an intermediate.

66. Defendants are not entitled to the carve out for attorneys under the MCSPA. *See* M.C.L. § 445.1822(c)(iv). Cordoba is not licensed to practice law in Michigan, its services were not provided within the course and scope of its practice as an attorney, and Cordoba engages in the business of a credit services organization on a regular and continuing basis. Stratton may be licensed to practice in Michigan, but it did not act within the scope of its practice as an attorney in relation to Plaintiff and, in connection with Cordoba, Stratton purports to provide debt settlement services on a regular and continuing basis.

### a. Violation of MCSPA § 445.1823

67. The MCSPA, pursuant to M.C.L. § 445.1823, provides a list of prohibited conduct for credit services organizations.

68. Pursuant to M.C.L. § 445.1823(b), a credit services organization cannot "charge a buyer or receive from a buyer of services money or other valuable consideration before completing performance of all services the credit services organization has agreed to perform for the buyer."

69. Defendants violated § 445.1823(b) of the MCSPA in much the same way they violated § 1679b(b) of the CROA. Defendants charged and received Plaintiff for services prior to *completing* performance of *all services* it agreed to perform.

15

Defendant's practice of charging consumers before enrolled obligations are fully resolved is in direct violation of state and federal law and acts as a means to dupe consumers into believing their debts will be resolved only to have their funds pilfered by Defendant.

70. Pursuant to M.C.L. § 445.1823(d), a credit services organization cannot "make or use a false or misleading representation in the offer or sale of the services of a credit services organization." Similarly, pursuant to M.C.L. § 445.1823(e), a credit services organization cannot "engage, directly or indirectly, in a fraudulent or deceptive act, practice, or course of business in connection with the offer or sale of the services of a credit services organization . . . ."

71. Defendant violated §§ 445.1823(d)-(e) of the MCSPA in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

72. Pursuant to M.C.L. § 445.1823(f), a credit services organization cannot "fail to perform the agreed upon services within 90 days following the date the buyer sings the contract for services."

73. Defendant violated § 445.1823(f) when it failed to perform the services within 90 days of the parties' agreement. Plaintiff made payments to Defendant for more than 3 months, yet Defendant failed to perform the services it agreed to perform for Plaintiff.

WHEREFORE, Plaintiff, DEBORAH M. EVANS, respectfully requests that the Arbitrator enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to M.C.L. § 445.1824(1);

c. Awarding Plaintiff punitive damages pursuant to M.C.L. § 445.1824(1);

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to M.C.L. § 445.1824(1); and,

e. Awarding any other relief as the Arbitrator deems just and appropriate.

### COUNT III – BREACH OF FIDUCIARY DUTY
#### PLAINTIFF AGAINST DEFENDANTS

74. Plaintiff restates and realleges paragraphs 1 through 73 as though fully set forth herein.

75. Defendants owed Plaintiff a fiduciary duty arising out of the nature of their relationship. Defendants were purporting to provide legal and financial services to Plaintiff, inherently rendering them her fiduciary.

76. Defendants breached the fiduciary duties owed Plaintiff given the nature of the "services" provided to Plaintiff. Defendants had a duty as a fiduciary to provide reasonable and beneficial services and advice to Plaintiff, yet repeatedly breached that duty through deceptive representations regarding the services, the misappropriation of Plaintiff's funds, and further provision of blatantly unlawful

services structured for the specific purpose of charging consumers for debt settlement services in a manner inconsistent with Michigan law. Defendants completely disregarded the fiduciary duties owed Plaintiff, and their breach of such duties caused Plaintiff significant financial harm as well as emotional distress.

WHEREFORE, Plaintiff, LISA G. GLASS, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages;

c. Award Plaintiff punitive damages;

d. Award Plaintiff reasonable attorney's fees and costs;

e. Enjoining Cordoba from continuing its unlawful conduct; and,

f. Awarding any other relief as the Honorable Court deems just and appropriate.


Dated: January 30, 2025                                  Respectfully submitted,

s/ Ahmad T. Sulaiman
Ahmad T. Sulaiman, Michigan Bar No. P82149
Counsel for Plaintiff
Admitted in the State Bar of Michigan
Admitted in the Eastern District of Michigan
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 575-8181 x124 (phone)
(630) 575-8188 (fax)
ahmad.sulaiman@sulaimanlaw.com

<u>s/ Nathan C. Volheim</u>
Nathan C. Volheim, Esq. #6302103
Counsel for Plaintiff
Admitted in the Eastern District of Michigan
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 575-8181 x113 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com